**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
ROBERT MOTTA,

                      Plaintiff,

      - against -

FIRST UNUM LIFE INSURANCE COMPANY,

                      Defendant.
----------------------------------------------------------X

**ORDER**

CV 09-3674 (JS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Presently before the Court is Plaintiff's letter motion seeking permission from the Court to include in the joint Pre-Trial Order two reports by Dr. Edward J. Barnoski ("Barnoski reports") which Plaintiff seeks to offer as trial exhibits. Dr. Barnoski is a neuropsychologist who examined Plaintiff on April 28, 2010 and June 25, 2010. Plaintiff also seeks permission, to the extent Plaintiff's treating physician, Mark Gudesblatt, M.D., relied on the Barnoski reports, to testify about them as well. For the reasons set forth below, Plaintiff's motion is DENIED.

**II.    BACKGROUND FACTS**

The first mention of Dr. Barnoski is found in the August 19, 2010 letter of Plaintiff's counsel where the Court was informed that Plaintiff was referred to Dr. Barnoski by Dr. Gudesblatt. Dr. Barnoski examined Plaintiff on two occasions and drafted two reports regarding those examinations. Plaintiff's counsel further mentioned that he only came into possession of the reports on August 2, 2010, and expects that Dr. Gudesblatt would testify at his deposition with respect to these reports.

In response to this letter, Defendant's counsel confirmed to the Court that he had received the reports on August 13, 2010. However, counsel argued that the Defendant would be severely prejudiced by this late production since the reports were available for disclosure prior to the expiration of the discovery deadlines set forth in the Amended Case Management and Scheduling Order ("ACMSO").[1] Counsel also noted that Dr. Barnoski was not disclosed in Plaintiff's Rule 26(a) initial disclosures.

Subsequent to these letters, the parties submitted a joint Pre-Trial Order. Dr. Barnoski was not listed as a witness whom Plaintiff intended to call at trial. However, the Plaintiff identified, as exhibits, the Barnoski reports. *See* DE 25 ("Pre-Trial Order") at 16. The Defendant objected to these exhibits in the Pre-Trial Order on multiple grounds, including their not being timely produced pursuant to the ACMSO. After hearing some argument on this issue at the December 29, 2010 Pre-Trial Conference, the Court directed Plaintiff to file a letter motion outlining the relief he was seeking, namely, to include Dr. Barnoski's reports, and to provide caselaw supporting his arguments.

### III. DISCUSSION

As an initial matter, the Court finds the parties' respective submissions troubling. Surprisingly, neither party attached the Barnoski reports as an exhibit to the motion papers. In addition, Plaintiff's "letter motion" is one page in length and completely lacks any legal support for counsel's position. Equally deficient is Defendant's opposition, totaling eight (8) pages in

---

[1] Pursuant to the ACMSO (*see* DE 15), the following deadlines were in place: All fact witness depositions to be completed by July 1, 2010; Plaintiff's expert report and all disclosures required under Rule 26 to be served no later than July 1, 2010; All discovery to be completed by September 10, 2010. The deadline to complete discovery was extended to September 21, 2010 for the limited purpose of taking the deposition of Dr. Gudesblatt.

length, which not only violated this Court's Individual Practice Rules' limitation on letter motions to three (3) pages, but also addressed issues no longer contested by Plaintiff. For instance, Plaintiff's counsel has indicated, on more than one occasion, that he will not call Dr. Barnoski as either an expert witness or treating physician at trial. *See* Dec. 29 Tr. at 3:21 ("Now, I don't intend to call him as a witness."); *see also* DE 27 at 2 ("The plaintiff does hereby acknowledge that he will not call Dr. Barnoski as either a treating or expert witness."). Therefore, Defendant's argument in support of barring any testimony from Dr. Barnoski is, for all intent and purposes, irrelevant. In addition, Defendant presents multiple arguments premised on Dr. Gudesblatt being offered as an expert witness. However, Plaintiff acknowledged at the Pre-Trial Conference that Dr. Gudesblatt is not an expert witness and is only being offered as a treating physician.[2] Dec. 29 Tr. at 4:4-14. Despite these procedural and substantive irregularities (and the limited information provided), the Court will nevertheless address the pending dispute.

A.  **Barnoski Reports**

Plaintiff's counsel maintains that he only first became aware of the Barnoski reports on August 2, 2010, and that he promptly provided those reports to Defendant on August 11, 2010. Notwithstanding this fact, the Defendant argues that the Barnoski reports should be barred as

---

[2]  While Plaintiff's counsel represented to the Court at the December 29 Pre-Trial Conference that Dr. Gudesblatt is not an expert and will only be testifying as a treating physician, the submitted Pre-Trial Order inexplicably states that "Dr. Gudesblatt is expected to testify as an expert witness concerning plaintiff's neurological condition as well as about his treatment of the plaintiff from 1996 to the present time." *See* Pre-Trial Order at 7. Therefore, for the sake of completeness, to the extent Plaintiff still seeks to offer expert testimony from Dr. Gudesblatt, notwithstanding counsel's representation to the contrary, the Court finds that Plaintiff has waived this right and Dr. Gudesblatt is hereby precluded from offering any testimony traditionally considered to be "expert" testimony and for which an expert report would be required.

untimely pursuant to Rule 37(c) of the Federal Rules of Civil Procedure.³ Rule 37(c) states the following:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37 (c)(1). The Second Circuit has made clear that preclusion under Rule 37(c) is not mandatory. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (finding that the district court erred in its determination that "preclusion is mandatory" under Rule 37(c)(1)). In fact, courts have "wide discretion to impose sanctions" under Rule 37. *Id.* at 294.

Defendant argues that Plaintiff failed to list Dr. Barnoski's reports as documents that Plaintiff intended to use at trial in his Rule 26(a) initial disclosures and/or failed to supplement those disclosures. The Court first notes that Plaintiff's visits to Dr. Barnoski occurred after Plaintiff served his initial disclosures on February 3, 2010. As such, the Barnoski reports could not have been part of Plaintiff's initial disclosures. In addition, while Plaintiff has a continuing obligation under Rule 26(e) to supplement his disclosures, Plaintiff provided Defendant with the Barnoski reports before the close of discovery. Pursuant to the ACMSO, the deadline by which all discovery was to be completed was September 10, 2010. While the Court in no way condones the apparent delay in Plaintiff providing his counsel with the Barnoski reports, the ultimate production to Defendant's counsel was effected within the deadline. Moreover, to the extent the Defendant contends that this report was untimely in light of the July 1, 2010 deadline to serve all expert reports, such an argument fails since these reports are not being offered as expert reports

---

³ This objection is marked on the Pre-Trial Order as objection #3. Pre-Trial Order at 16.

pursuant to Rule 26(a)(2)(B).[4] As such, purely from a timeliness standpoint, the Court finds Defendant's objection to be unwarranted.

However, this is not the only problem with regard to the reports of Dr. Barnoski. Plaintiff has not listed Dr. Barnoski as a witness and is not calling him as a witness at trial. Yet, Plaintiff wishes to introduce Dr. Barnoski's reports as evidence. In these circumstances, the content of Dr. Barnoski's reports is hearsay. Plaintiff seeks to get these reports admitted through another witness. Hearsay is traditionally defined as "testimony that is given by a witness who relates not what he or she knows personally, but what others have said, and that is therefore dependent on the credibility of someone other than the witness. Such testimony is generally inadmissible under the rules of evidence." *Black's Law Dictionary* 790 (9th ed. 2009). The contents of the Barnoski reports have not been open to testing by cross-examination or an opportunity for cross-examination. Likewise, the statements are not made under oath. The reports, then, standing alone, are inadmissible as hearsay under Rule 802 of the Federal Rules of Evidence.

**B.  Trial Testimony of Dr. Gudesblatt**

Plaintiff also seeks to elicit testimony from Dr. Gudesblatt regarding the Barnoski reports, "[t]o the extent Dr. Gudesblatt relied upon Dr. Barnoski's reports, as contained in his own file." The Defendant challenges such testimony by arguing that Dr. Gudesblatt's failure to offer an expert report precludes him from testifying about his views concerning the opinions of another expert. The Court agrees.

---

[4] The Defendant also maintains that the Barnoski reports are not relevant as they lend no support to Plaintiff's claim that he is disabled due to chronic dizziness. While this may very well be the case, neither party has provided this Court with the Barnoski reports at issue.

5

While it is true that Plaintiff has no intention of having Dr. Gudesblatt testify as an expert witness in this case – and is nevertheless precluded from doing so – a treating physician need not serve an expert report in order to testify. *See Reilly v. Revlon, Inc.*, No. 08 Civ. 205, 2009 WL 2900252, at *3 (S.D.N.Y. Sept. 9, 2009) ("Treating physicians do not need to be designated as experts in order to testify."); *Monroe-Trice v. Unum Emp. Short-Term Disability Plan*, No. 00 Civ. 6238, 2003 WL 68033, at *1 (S.D.N.Y. Jan. 8, 2003) ("Rule 26(a)(2)(B) does not require a treating physician to provide a report as a predicate to testifying for his patient."). However, without properly declaring a treating physician as an expert witness, the physician's testimony is limited to certain parameters, including his/her care and treatment of the patient. *See Turner v. Delta Air Lines*, No. 06-CV-1010, 2008 WL 222559, at *1 (E.D.N.Y. Jan. 25, 2008) ("[I]f the witness testifies only to the opinions formed in providing plaintiff medical care, such opinions are considered an explanation of treatment [ ] and the physician may properly be characterized as a fact witness."); *Monroe-Trice*, 2003 WL 68033, at *2 ("The doctor will, however, be permitted to testify about his evaluation and treatment of plaintiff, and may express his opinions about the plaintiff's condition and prognosis based upon his observations while treating plaintiff." ); *Lamere v. New York State Office for the Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004) ("It is indeed certain that a treating physician, who has not complied with the reporting requirements of Rule 26(a)(2)(B), should not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records."); *Peck v. Hudson City Sch. Dist.*, 100 F. Supp. 2d 118, 121 (N.D.N.Y. 2000) ("[T]o the extent that a treating physician testifies only to the care and treatment of the patient, the physician is not considered to be a 'specially employed' expert and is not subject to the written report requirements of Rule 26(a)(2)(B).").

Therefore, the key to what a treating physician can testify to without being declared an expert is based on *his* personal knowledge from consultation, examination and treatment of the Plaintiff, "not from information acquired from outside sources." *Mangla v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y. 1996); *see also Smolowitz v. Sherwin-Williams Co.*, No. 02-CV-5940, 2008 WL 4862981, at *4 (E.D.N.Y. Nov. 10, 2008) (stating that a treating physician's testimony "must be based on information that *he* has acquired in his role as a treating physician.") (emphasis added); *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995) ("The relevant question is whether these treating physicians acquired their opinions . . . directly through their treatment of the plaintiff."). As noted, Dr. Gudesblatt himself is not required to provide a report in order to testify. Courts in this Circuit have commented that a treating physician cannot be limited to solely factual testimony. *Lamere*, 223 F.R.D. at 87; *Byrne v. Gracious Living Indus., Inc.*, No. 01 Civ. 10153, 2003 WL 446474, at *2 (S.D.N.Y. Feb. 25, 2003) ("A treating physician who is called to testify to information acquired solely in that role, as opposed to giving an opinion formulated for trial, is not an expert for purposes of Rule 26(a)(2)(A)" and that physician may render expert opinion testimony regarding causation even without submitting a detailed report). As the court noted in *Lamare*,

> It is a given that there are facts to which a treating physician would testify to in order to explain the treatment, diagnosis, and prognosis provided to the patient. Those facts would be the patient's on-going medical history, the course of treatment, medication and other prescriptions, and any other relevant facts germane to the course of treatment. But we cannot completely limit a treating physician to solely factual testimony. A treating physician is no less a person with specialized knowledge and, in the scheme of her physician duties, provides opinions of various nature in the process of treating to her patient. In this respect, we view the doctor's testimony as far broader than just a mere fact witness but as an expert in that the doctor's [ ]

> scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue [.] [A] witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Lamere*, 223 F.R.D. at 87-88 (quoting Fed. R. Evid. 702). The court in *Lamere* concluded that physicians are expert witnesses where testimony is governed by Rule 702 rather than 701, even though they do not fall within the confines of experts under Rule 26. *See Reilly*, 2009 WL 2900252, at *3 (concluding that treating physicians may give opinion testimony about Plaintiff's condition and emotional damages pursuant to Fed. R. Evid. 702).

Even if Dr. Gudesblatt is permitted to provide expert testimony in his own right with regard to causation, his testimony must nonetheless be limited to and based upon the information that he has acquired in his role as a treating physician. *Smolowitz*, 2008 WL 4862981, at *4. As one court has noted, "[a] doctor's opinions on the issue of causation are relevant, indeed, necessary, to the treatment of the patient and therefore constitute an explanation of treatment." *Turner*, 2008 WL 222559, at *2. Therefore, Dr. Gudesblatt will be permitted to testify as a treating physician and will be permitted to offer opinion testimony on diagnosis, treatment, prognosis and causation, but solely as to the information he has acquired through observation of the Plaintiff in his role as a treating physician limited to the facts in Plaintiff's course of treatment.

By contrast, seeking to have Dr. Gudesblatt testify with regard to another physician's records, opinion or recommendations is a different story. In the circumstances presented by

Plaintiff, counsel seeks to elicit testimony from Dr. Gudesblatt regarding reports containing the opinions of Dr. Barnoski. Clearly, this information cannot be characterized as being within the personal knowledge of Dr. Gudesblatt and was not obtained through Dr. Gudesblatt's own treatment of the Plaintiff. *Compare Salas*, 165 F.R.D. at 33 (concluding that treating physicians' proposed testimony is proper since "[p]laintiff is not asking these doctors to comment upon or review the opinions of other doctors.") *and Fanning v. Target Corp.*, No. 05 Civ. 12, 2006 WL 298811, at *2 (S.D.N.Y. Feb. 6, 2006) ("[T]here is no suggestion in the record that plaintiffs intended to elicit from Drs. Greene and Katz anything other than their observations and opinions derived from their examination and treatment of [the plaintiff]."). Therefore, in order for Dr. Gudesblatt to testify concerning opinions not gleaned from his own diagnoses and treatment of the Plaintiff, he must have been designated an expert witness and must have prepared the necessary expert report. Since the deadline to do so has passed, Dr. Gudesblatt is precluded from offering any testimony regarding the Barnoski reports.

## IV. CONCLUSION

In light of the foregoing information and findings, the Barnoski reports are precluded from being offered as exhibits at trial and Dr. Gudesblatt is precluded from offering any testimony regarding the contents of the Barnoski reports. The joint Pre-Trial Order is to be amended in accordance with this Order and the amended Order is to be filed on ECF by September 30, 2011, at which time the case will be certified to Judge Seybert as trial-ready.

**SO ORDERED.**

Dated: Central Islip, New York
September 19, 2011

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge